IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

NANCY SCHULTE,
Plaintiff,

v.

Case No. 19–00215–JPG–DGW

ANDREW SAUL,
Commissioner of Social Security,
Defendant.

### MEMORANDUM & ORDER

### I. INTRODUCTION

This is an appeal of the Social Security Administration's decision denying Plaintiff Nancy Schulte's applications for disability insurance and Social Security Income benefits. Before the Court is Plaintiff's Motion for Summary Judgment, filed September 5, 2019. (ECF No. 16). The Commissioner of Social Security filed a response on November 7. (ECF No. 20). For the reasons that follow, the Court **DENIES** Plaintiff's Motion for Summary Judgment and **AFFIRMS** the Social Security Administration's decision.

### II. PROCEDURAL & FACTUAL HISTORY

Plaintiff worked part-time as an assistant manager at a convenience store from 2008–2011. (Hr'g Tr. 10, ECF No. 13–2). Her duties included cashiering, unloading of goods, scheduling, and receiving orders. (Id. at 12). These duties mirrored her previous role as an assistant manager at a different convenience store from 2003–2006, where she was also charged with hiring, firing, and payroll. (Id. at 14–15).

In April 2015, Plaintiff protectively filed applications for disability insurance and Social Security Income benefits with the Social Security Administration ("SSA"). (SSA Decision 1, ECF

No. 13–1). She complained of arthritis in her lower back and neuropathy.[1] (Hr'g Tr. 20–21). The SSA denied Plaintiff's applications. (SSA Decision 1). That decision was affirmed upon reconsideration. (Id.). Plaintiff then filed a written request for a hearing on her applications before an administrative law judge ("ALJ"). (Id.). Plaintiff appeared pro se and was informed of her right to representation. (Id.).

The ALJ applied the five-step analysis used to determine whether an applicant is disabled, see 20 C.F.R. § 404.1520(a), and concluded that Plaintiff is not disabled, (SSA Decision 2). At Step 1, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date in February 2014. At Step 2, the ALJ evaluated Plaintiff's conditions and concluded that she was suffering from severe impairments: "Asthma, obesity, psoriasis, venous insufficiency, sensory neuropathy, mild lumbar spine degenerative disc disease, mild cervical degenerative disc disease, osteoarthritis/psoriatic arthritis, minimal white matter disease in the brain, and right knee degenerative joint disease." (Id. at 3). At Step 3, however, the ALJ determined that these impairments did not meet the statutory listing for presumptive disability. (Id. at 5).

In evaluating Plaintiff's residual functional capacity at Step 4, the ALJ determined that Plaintiff could perform sedentary work seated for six hours and standing for two hours. (Id. at 6–9). The ALJ gave little weight to the opinion of Plaintiff's treating physician, Dr. Alao, who asserted that Plaintiff "was limited to standing/walking and sitting 4 hours in an 8-hour day; she could sit and stand/walk for 30 minutes at a time; and she needed additional unscheduled breaks during the workday, per [Plaintiff]." (Id. at 8). According to the ALJ, Dr. Alao's opinion relied heavily on Plaintiff's subjective reports and was "not supported by the objective findings on the

---

[1] Neuropathy "means sick nerves in arms, legs, hands and feet. It can cause either sensory or motor changes or both." ANN G. HIRSCHMAN, MED. PROOF OF SOC. SEC. DISABILITY § 11:21 (2d ed. 2018). It is commonly caused by back issues and may result in total numbness or "partial loss of sensation that actually presents as pain . . . ." Id.

record." (Id.). Although the ALJ did not dispute that Plaintiff's impairments could result in the symptoms complained of, he determined that they were "not entirely consistent with the medical evidence and other evidence in the record," such as treatment records showing only mild degenerative disc disease, an electromyogram that yielded normal results, and mild findings on examination.[2] (Id.). Moreover, the ALJ asserted that this determination was supported by Plaintiff's recent history of cooking, driving, walking without an assistive device, and interstate travel. (Id.).

Finally, the ALJ concluded at Step 5 that although Plaintiff cannot perform her past relevant work due to exertion demands, she is still capable of performing semi-skilled work. (Id. at 9–11). This was based in part on the testimony by James E. Bordieri—a vocational expert. (Id.). He stated that Plaintiff possesses skills from her work as an assistant manager that would transfer to sedentary work, such as a personnel scheduler, payroll clerk, or "computer data entry person." (Hr'g Tr. 45). He further stated that these positions are semi-skilled, require less skill than her previous position (although they involve "similar materials, products, processes, and . . . services"), and carry a specific vocational preparation ("SVP") of 7. (Id. at 44, 46–47). Although the ALJ stated in his decision that the position carried a SVP of 4, he nevertheless agreed that Plaintiff was fit to work as a personnel scheduler, payroll clerk, or data-entry clerk. Accordingly, he denied Plaintiff's applications.

In February 2019, Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). Plaintiff motioned for summary judgment, (ECF No. 16), and the Commissioner responded, (ECF No. 20).

---

[2] These findings on examination included "steady and normal gait without need for assistive device, which does not support [Plaintiff's] reports of falls and her testimony of prolonged traveling by airplane, and car does not support reports of needing to alternate position every half hour." (SSA Decision 9).

### III. LEGAL STANDARD

In reviewing the SSA's benefits decisions, the Court treats its findings as conclusive "so long as they are supported by 'substantial evidence.' " Beistek v. Berryhill, 139 S. Ct. 1148, 1152 (2019) (citing 42 U.S.C. § 405(g)). A decision is supported by substantial evidence if it contains sufficient evidence to support the SSA's factual determinations. Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). This is not an onerous standard, meaning something "more than a mere scintilla." Id. In other words, it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). This only requires the Court to determine "whether the ALJ built an 'accurate and logical bridge' from the evidence to her conclusion that the claimant is not disabled." Simila v. Astrue, 573 F.3d 503, 513 (7th Cir. 2009) (quoting Craft v. Astrue, 539 F.3d 668, 673 (7th Cir. 2008)).

### IV. LAW & ANALYSIS

The ALJ's decision denying Plaintiff's applications for benefits was based on substantial evidence. In giving little weight to the opinion of Plaintiff's treating physician, the ALJ suitably discussed the conflicts between the physician's testimony and the objective medical evidence on the record. Moreover, the discrepancy between the vocational expert's SVP determination and the ALJ's decision was harmless error: The alternative jobs offered in the decision apply to Plaintiff regardless of whether her work as an assistant manager carried a SVP of 4 or 7.

#### A. THE ALJ'S DECISION TO GIVE LITTLE WEIGHT TO DR. ALAO'S OPINION WAS SUPPORTED BY SUBSTANTIAL EVIDENCE.

In reviewing an application for Social Security benefits, the ALJ must give a treating physician's opinion controlling weight where the following two conditions are met: (1) the opinion is supported by "medically acceptable clinical and laboratory diagnostic techniques"; and (2) it is "not inconsistent" with substantial evidence on the record. 20 C.F.R. § 404.1527(d)(2). "If the

opinion is unsupported or inconsistent with the record, the ALJ may still choose to accept it, but if the ALJ rejects the opinion, he must give a good reason." Schaaf v. Astrue, 602 F.3d 869, 875 (7th Cir. 2010). But "[a]s a general rule, reviewing courts will not interfere with the Commissioner's resolution of conflicting evidence." HARVEY L. MCCORMICK, 2 SOC. SEC. CLAIMS & PROC. § 14:9 (6th ed. 2019).

The United States Court of Appeals for the Seventh Circuit has repeatedly affirmed ALJ decisions to discount the opinions of treating physicians where the ALJ "minimally articulate[d] his reasons for crediting or rejecting evidence of disability." Clifford v. Apfel, 227 F.3d 863, 870 (7th Cir. 2000). In Skarbek v. Barhart, 390 F.3d 500, 504–504 (7th Cir. 2004), for example, the court found that the ALJ's decision to give little weight to the plaintiff's treating physician was supported by substantial evidence, pointing to inconsistencies between the opinion and objective medical evidence, such as X-rays. Similarly, the court in Ketelboeter v. Astrue, 550 F.3d 620, 625 (7th Cir. 2008), upheld the ALJ's decision to discount the opinion of the plaintiff's treating physician because physical and objective evidence on the record failed to corroborate the plaintiff's subjective complaints.

Here, the ALJ gave little weight to Dr. Alao's opinion after determining that it was based primarily on Plaintiff's subjective evaluation of her own condition. According to the ALJ, that evaluation conflicted with medical evidence on the record. Plaintiff argues, however, that the ALJ's reasoning was a mere "general rejection" that ignored Plaintiff's consistent reports of lower extremity numbness and "objective evidence noting limited sensation on examination." (Pl.'s Mot. for Summ. J. 16). The Court disagrees.

The ALJ's decision to give little weight to Dr. Alao's opinion was not a general rejection, but rather it was supported by both objective evidence and the ALJ's findings on examination.

Importantly, the ALJ did not dispute that Plaintiff experienced numbness—he took issue with Dr. Alao's opinion that Plaintiff was limited in her ability to stand and sit throughout the workday and could only stand for 30 minutes at a time. (SSA Decision 9) ("The evidence of neuropathy supports limitation to sedentary exertional work, but does not support [Plaintiff's] subjective reports that she must alternate position every 30 minutes and she could only sit for 4 hours in an 8-hour day."). The ALJ's decision to give little weight to Dr. Alao's determination was based on objective medical findings of mild degenerative disc disease, a normal electromyogram, and mild findings on examination. Specifically, the results of Plaintiff's electromyogram did not support Plaintiff's subjective complaints of upper extremity neuropathy; Plaintiff's reports of falls contradicted her ability to walk without need for an assistive device; and the fact that Plaintiff drove, traveled, and performed sedentary activities in her home for extended periods disproved her claim that she needs to alternate positions every half hour. While Plaintiff may disagree with the ALJ's conclusion, it was not a blanket denial: It was supported by substantial evidence on the record, and this Court is required to show deference to that reasoned decision.

### B. THE ALJ'S SVP DETERMINATION WAS SUPPORTED BY SUBSTANTIAL EVIDENCE.

In assessing Plaintiff's vocational background at Step 5, the ALJ considered the physical and mental demands of past relevant work "done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [Plaintiff] to learn to do it." 20 C.F.R. § 416.960(b)(1). This assessment was primarily based on the Dictionary of Occupational Titles (the "DOT"), which "lists *maximum* requirements of occupations as generally performed." SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000) (emphasis added). The DOT also provides a special vocational preparation ("SVP") level for each occupation: The amount of "time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for

average performance in a specific job-worker situation." Dictionary of Occupational Titles, INFO. TECH. ASSOCS., Appendix C, https://bit.ly/39VuUTl [hereinafter DOT]. "[U]nskilled work corresponds to an SVP of 1–2; semi-skilled work corresponds to an SVP of 3–4; and skilled work corresponds to an SVP of 5–9 in the DOT." SSR 00-4p.

In order to assess the SVP of Plaintiff's work experience as an assistant manager, the ALJ sought the views of a "vocational expert"—a "professional[] under contract with SSA to provide impartial testimony in agency proceedings." Beistek, 139 S. Ct. at 1152. "[A] vocational expert's testimony may count as substantial evidence even when unaccompanied by supporting data." Id. But when a vocational expert's evidence conflicts with the DOT, the ALJ "must elicit a reasonable explanation for the conflict before relying on the [vocational expert's] evidence . . . ." SSR 00-4p. Since "[t]he DOT contains information about most, but not all occupations," it is reasonable for an ALJ to rely on a vocational expert's experience in job placement or career counseling to determine the SVP for an unlisted occupation. Id.

Plaintiff worked as an assistant manager of a convenience store—a position that does not fit precisely into a category in the DOT. Plaintiff testified during the hearing that the first assistant-manager role consisted of cashiering, unloading, preparing work schedules, and making and receiving orders. (Hr'g Tr. 12–13). The vocational expert acknowledged that the DOT does not contain an entry for assistant managers, but it does have one for retail store managers. (Id. at 44). That position corresponds to a SVP of 7. (Id.). Accordingly, he testified that Plaintiff was fit to work as a personnel scheduler, payroll clerk, or data-entry clerk—semi-skilled positions with a SVP of 4. (Id. at 45). In the ALJ's decision, however, he stated that Plaintiff's role as an assistant manager was semi-skilled with a SVP of 4. (SSA Decision 11).

The SVP was then used to determine which work, if any, Plaintiff is still fit to perform in the national economy. Relying on the vocational expert's testimony, the ALJ determined that Plaintiff could still work as a payroll clerk, personnel scheduler, or data-entry clerk. (SSA Decision 10–11).

Plaintiff argues that the ALJ erroneously classified her first assistant-manager position as a SVP of 4, rather than a SVP of 7—contrary to the vocational expert's testimony. The DOT describes a store manager with a SVP of 7 as an employee that prepares work schedules, sets prices, takes inventory, maintains store records, orders merchandise, and supervises other employees. DOT § 185.167–046, https://bit.ly/2s8C9Gs. This position carries a SVP of 7, id., and therefore requires two-to-four years to learn, id. at Appendix C, https://bit.ly/2TbfkwW.

Although the ALJ incorrectly cited the vocational expert's testimony to be that Plaintiff's assistant-manager position was a SVP of 7, the ALJ nonetheless properly found the position to carry a SVP of 4. As Plaintiff notes, positions carrying a SVP of 7 require two-to-four years' training, yet Plaintiff worked as a cashier for only eight months prior to her promotion to assistant manager. The discrepancy between the vocational expert's testimony and the ALJ's decision, however, was harmless error. As discussed, the ALJ ultimately determined that Plaintiff's assistant-manager position carried a SVP of 4; and the positions that the ALJ suggested that Plaintiff is fit to work carry the same. Regardless of whether Plaintiff's assistant-manager position was a SVP of 4 or 7, the jobs that the ALJ suggested that Plaintiff could still take on—payroll clerk, personnel scheduler, and data-entry clerk—are semi-skilled with SVPs of 4. Even if the ALJ intended to classify the position at the higher SVP, Plaintiff was not prejudiced by his misstatement of the vocational expert's testimony. The Court will not remand where the ALJ, upon addressing

the purported error, would reach the same result. See McKinzey v. Astrue, 641 F.3d 884, 892 (7th Cir. 2011).

Plaintiff also argues that her first assistant-manager position should not have been used to calculate her SVP because she only held the position part-time from 2003–2006. This argument fails, however, because substantial gainful activity includes work "done on a part-time basis." 20 C.F.R. § 416.972.

Finally, Plaintiff contends that the ALJ failed to fully develop the record regarding her transferrable skills. Specifically, she contends that the record is devoid of any mention of her experience with computers. Since the DOT descriptions for payroll clerk, personnel scheduler, and data-entry clerk include computer-related tasks, Plaintiff asserts that the ALJ erred by not inquiring further into the minutia of her work experience. Importantly, however, the DOT list the *maximum* requirements for a given job. Further, the DOT definition for "payroll clerk" states that workers may "[c]ompile payroll data . . . using computer *or calculator*." DOT § 215.382–014, https://bit.ly/2FwNSBU. And the DOT definition for "personnel scheduler" makes no reference to computer skills. Id. at § 215.367–014, https://bit.ly/37VGBYf. Based on Plaintiff's testimony regarding her experience as an assistant manager that was tasked with both payroll and preparing work schedules, the ALJ's determination that Plaintiff possesses the requisite skills to perform these tasks was based on substantial evidence. See, e.g., Thomas v. Comm'r of Soc. Sec., 498 Fed. App'x 916, 920 (11th Cir. 2012) (finding harmless error where—despite the vocational expert's faulty testimony regarding two available positions that were beyond the claimant's educational level—the expert testified as to two adequate other jobs that the claimant could perform); Johnson v. Comm'r of Soc. Sec., No. 5:14–CV–141–Oc–PRL, 2014 WL 12623026, at *5 (M.D. Fl. July 8, 2009) (same).

## V. CONCLUSION

The Court **DENIES** Plaintiff Nancy Schulte's Motion for Summary Judgment and **AFFIRMS** the Social Security Administration's decision. The Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

**Dated: Thursday, January 16, 2020**

<u>**S/J. Phil Gilbert**</u>
**J. PHIL GILBERT**
**UNITED STATES DISTRICT JUDGE**